IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CELIA JOHNSON, Individually and on Behalf of all Others Similarly Situated, | § § § § | Civil Action No. H:03-3641 |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| TGF PRECISION HAIRCUTTERS, INC.; BRELIAN, INC. and FRANK TAVAKOLI | § § § § § | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| Defendants. | § § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS

Plaintiff Celia Johnson, individually and on behalf of all others similarly situated, (collectively, "Plaintiffs") files this Response to the Motion for Sanctions filed by Defendants TGF Precision Haircutters, Inc., Brelian, Inc., and Frank Tavakoli (collectively, "Defendants"), and would show the Court as follows:

### I.

### SUMMARY OF ARGUMENT

The Court should deny Defendants' Motion for Sanctions because the sole basis for the Motion is factually incorrect. Defendants' Motion accuses Plaintiffs' counsel of introducing blatantly false testimony and of standing before this Honorable Court at the May 24, 2004, hearing and lying straight to his Honor's face. Nothing could be further from the truth. Before impugning the reputations of attorneys practicing in this Court, Defendants' counsel have a responsibility to be absolutely certain that their positions are correct and a responsibility to

1

conduct nothing less than a thorough investigation before making reckless accusations. Defendants' counsel's conduct falls far short of these standards.

Defendant's accusations are based solely on what turn out to be ***incorrectly dated*** file folder labels (the labels should have been dated February 2005, not February 2004). Defendants infer from the errant labels that Plaintiffs' counsel intentionally submitted false testimony and lied on the record in open court during the May 24, 2004 hearing. Defendants' counsel would have discovered the truth had they bothered to do any investigation at all or bothered to comply with Local Rule 7.1(D) by conferring with Plaintiffs' counsel before charging to the Courthouse armed with only half the story. This Response will demonstrate that Defendants' charges of misconduct are nothing more than the result of a type-o by a file clerk.[1] This is hardly a basis for sanctions or to disqualify Plaintiffs' counsel. The Court should deny Defendants' Motion for Sanctions.

## I.
## BACKGROUND

Plaintiff Celia Johnson filed this Fair Labor Standards Act ("FLSA") case on September 10, 2003, seeking to recover unpaid overtime wages for herself and for all those similarly situated to her. On March 16, 2004, Plaintiff sought permission to send a court-approved notice to other individuals who had been subjected to the same illegal policies as had Plaintiff Johnson. Shortly thereafter, John Cunningham, attorney for Cathy Lowry, contacted

---

[1] A similar type-o in Defendants' Motion highlights the absurdity of Defendants' argument. It is almost humorous that on the bottom of page 2 of Defendants' Motion for Sanctions, Defendants made a type-o when quoting Cunningham's May 18, 2004 declaration. Defendants' Motion quotes paragraph 3 of Cunningham's declaration as saying "On *April 22, 2002* Mrs. Lowry met me . . ." *See* Defendants' Motion at 2 (emphasis added). Cunningham's actual declaration says, "On *April 22, 2004* Mrs. Lowry met me . . ." *See* May 18, 2004 Cunningham Declaration at 3, attached as Exhibit 1 to May 24, 2005 Cunningham Declaration, attached as Exhibit A (emphasis added). Plaintiffs will refrain from leaping to conclusions about Defendants' motives in "misrepresenting" the declaration to the Court.

2

counsel for Plaintiff and indicated that Lowry wished to provide evidence relevant to the case. *See* Declaration of John Cunningham ¶¶ 4–5, attached as Exhibit A.

After Plaintiffs filed Lowry's declaration, Defendants filed a Motion to Strike the declaration and to disqualify Plaintiffs' counsel for improperly contacting Lowry. *See generally* Defendants' Motion to Strike Declaration of Cathy Lowry. On May 24, 2004, the Court held a hearing to consider the Motion to Strike and to Disqualify. During the hearing, Plaintiffs' counsel explained to the Court that Lowry was represented by her own counsel at all times Plaintiffs' counsel dealt with Lowry, and thus, there were no improper actions on behalf of Plaintiffs' counsel. *See* Plaintiff's Response to Motion to Disqualify at 3. At the conclusion of the hearing, the Court determined that Plaintiffs' counsel acted in accordance with applicable rules and denied Defendants' Motion to Strike and to Disqualify.

In January of 2005, Plaintiffs began preparing their response to Defendants' Motion to Decertify the Class. *See* Declaration of Stephanie Spanhel ¶ 2, attached as Exhibit B. In preparation for drafting this response, Plaintiffs were interested in obtaining a supporting declaration and certain documents from Lowry. *Id.* ¶ 3. After receiving Mr. Cunningham's approval, Plaintiffs contacted Lowry about reviewing these documents. *Id.* ¶¶ 3-4. Lowry volunteered to hand over the documents to Plaintiffs. *Id.* ¶ 4. On February 10, 2005, Plaintiffs arranged for a courier to pick up these documents at Lowry's residence. *Id.*

The couriers delivered the boxes to Stephanie Spanhel (an associate with Edwards & George) and the boxes remained in her office for several days. *Id.* On February 18, 2005, Spanhel arranged for the courier to pick up additional documents from Lowry's home. *Id.* ¶ 8. After meeting with other members of Plaintiffs' counsel regarding the best means of reviewing the documents, Spanhel arranged for Andrea Russell, Plaintiffs' counsel's file clerk, to have the

3

boxes moved to the file room. *Id.* At this point, Russell removed the documents from the original boxes in which they arrived and placed them in file folders. *See* Declaration of Andrea Russell ¶ 3, attached as Exhibit C. Russell created the labels that were placed on the file folders which are at the heart of Defendants' Motion for Sanctions. Russell has no specific recollection as to whether the dates on those labels were accurate. *Id.* ¶ 4.

After reviewing the documents in these boxes of documents, Defendants noticed that several of the labels on the file folders contained the date "2/10/04." *See* Defendants' Motion for Sanctions at 6. This date was approximately two months prior to Lowry's first contact with Plaintiffs' counsel. *See* Cunningham Declaration ¶ 4–5; Declaration of David George ¶ 3–4, attached as Exhibit D. Rather than conferring about the Motion for Sanctions, which would have revealed the clerical error on file folder labels, Defendants filed a Motion for Sanctions asking that Plaintiffs' counsel be disqualified from representing Plaintiffs. *See generally* Defendants' Motion for Sanctions.

## II.
## ARGUMENT

### A.  Standard of Review

Motions to disqualify counsel have long been used purely as a tactical maneuver. Disqualification is a severe remedy. *Shelton v. Hess*, 599 F. Supp. 905, 909 (S.D. Tex. 1984). As a result, "courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic." *Abney v. Wal-Mart*, 984 F. Supp. 526, 528 (E.D. Tex. 1997) (quoting *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990)). The party seeking disqualification of an attorney bears the burden of proving that disqualification is warranted. *Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 508 (S.D. Tex. 1996). Motions to disqualify an attorney are substantive motions determined by

4

standards developed under federal law. *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992). This Court has held that it "will neither disqualify nor otherwise chasten a member of the Court's bar without being satisfied that a violation rises to a level requiring action." *Cramer v. Sabine Transportation Co.*, 141 F. Supp. 2d 727, 731 (S.D. Tex. 2001).

**B.    Defendants Motion is Based Entirely a Few Mislabeled File Folders**

If Defendants had conferred with Plaintiffs as required by the local rules,[2] Plaintiffs would have explained that this matter is simply a clerical error. The only evidence supporting Defendants' claims of misconduct are the incorrectly dated labels themselves. From these labels, Defendants ask the Court to draw the conclusion that numerous attorneys were engaged in a deliberate conspiracy to defraud the Court. The true and simpler explanation is that Plaintiffs' counsel mislabeled the file folders and that the documents produced on February 10, 2005 were erroneously marked as being from February 10, 2004.

The great weight of the evidence supports Plaintiffs' explanation. First, Plaintiffs' counsel swears under penalty of perjury that he had no contact with Lowry in February of 2004. *See* George Declaration ¶ 4. Second, Lowry's counsel (Cunningham) reaffirms that he first spoke with Lowry during the week of April 15, 2004. *See* Cunningham Declaration ¶ 4. He also reaffirms that he arranged for Lowry to meet Plaintiffs' counsel for the first time on April 17, 2004. *Id.* ¶ 5. David George, the former attorney-in-charge for Plaintiffs in this matter, affirms this meeting was the first time that Plaintiffs' counsel had any dealings with Lowry. *See* George Declaration ¶ 3. Furthermore, George affirms that Plaintiffs received no documents from Lowry in February of 2004, and that those documents labeled as having been

---

[2]. *See* S.D. TEX. LOCAL RULE 7. Although it is within their rights, Plaintiffs are not asking the Court to Strike Defendants' Motion for Sanctions. Plaintiffs feel this is a simple misunderstanding that is best cleared up on the merits of the issue. However, the Court may strike the motion *sua sponte* if it so chooses. S.D. TEX. LOCAL RULE 11.4.

5

received in February of 2004 were in fact received in February of 2005. *Id.* ¶ 4–5. The Court has no grounds to disregard the George or Cunningham testimony, especially when considering the other supporting evidence.

In addition to the Cunningham and George testimony, Plaintiffs submit the testimony of Stephanie Spanhel, an associate for Plaintiffs' counsel who arranged for a courier to pick up documents at Lowry's residence on February 10, 2005. *See* Spanhel Declaration ¶ 4. Spanhel's billing records show that on February 10 and 11, 2005, she conducted an extended interview with Lowry and reviewed the new documents produced by Lowry. *Id.* ¶ 10, Ex. 1. By contrast, the firm's billing system for February 8-12, 2004, does not contain any entry in the TGF case, much less any entry in the TGF case discussing documents allegedly received from Lowry. *Id.* ¶ 9. After briefly reviewing the documents, Spanhel began drafting a memorandum to the file describing the documents. *Id.* ¶ 5. The Word Document properties regarding this memorandum demonstrate that it was created and last modified on February 11, 2005. *Id.* ¶ 7. A comparison the documents described in this memorandum to the documents mislabeled as being received on 2-10-04 reveals that the documents are, at the very least, substantially similar. *Id.* ¶ 6.[3]

Further, the billing records from Houston's Courier shows that they made a pick up at Lowry's home on February 10, 2005. *Id.* ¶ 11, Ex. 2. The courier picked up approximately 100 lbs. worth of documents. *Id.* Despite 100 lbs of documents being picked up on that date, Plaintiffs' case files contain no documents labeled as being received on February 10, 2005. *See* Declaration of Patrick K.A. Elkins ¶ 7, attached as Exhibit E.

---

[3] Due to concerns about waiving any applicable privileges, Spanhel's February 11, 2005 memorandum (and the screen shot of the document's properties) are not attached as exhibits hereto. If the Court believes it would be beneficial to review these documents, they will be made available for *in camera* inspection. Nothing in this response or any of the supporting materials filed herewith is intended to be or should be construed as a waiver of any privilege.

6

The testimony, attorney billing records, memorandum describing the documents, and the courier bills are strong evidence that the documents in question were received on February 10, 2005, and simply mislabeled as being received on February 10, 2004. Yet, the strongest evidence that the mislabeled documents were received in 2005 and not 2004 is the documents themselves. At least three separate documents in the folders labeled February, 10, 2004 are dated ***AFTER*** February 10, 2004. These documents conclusively demonstrate that the file clerk made a mistake in labeling the folders. The first document is a print-out from PublicData.com, which has an automatically generated date of June 26, 2004 on it. Elkins Declaration ¶ 5, Ex. 1. The second is a print-out from Mapquest.com, which also has an automatically generated date on it of July 30, 2004. *Id.* ¶ 5, Ex. 2. These two documents were found in Document Box 4, in a file folder labeled "Original Docs from Cathy Lowery Received 2/10/04; Redwell 2 of 8 from Original Box 1." *Id.* ¶ 5, Ex. 3. The third document is a list of former TGF employees who are not to be rehired dated April 21, 2004. *See* No Rehires . . . April 21, 2004. *Id.* ¶ 6, Ex. 4. This document was found in Document Box 5, in a file folder labeled "Original Docs from Cathy Lowery Received 2/10/04; Redwell 8 of 8 from Original Box 1."[4] *Id.* ¶ 6, Ex. 5. Therefore, the documents could not have possibly been produced on February 10, 2004 because several of the documents contain dates after February of 2004.

### III.
### CONCLUSION

The evidence is overwhelming that Plaintiffs received the documents in question from Cathy Lowry on February 10, 2005, and not in 2004. The attorneys in this case have reaffirmed and sworn that Plaintiffs' counsel and Cathy Lowry did not meet until April of 2004

---

[4]. The two labels themselves further demonstrate that it is not implausible that this issue is simply the result of a clerical error because the labels also list the documents as having come from "Cathy Lowery," when her name is in fact spelled "Cathy Lowry."

and that the documents in question were received on February 10, 2005. On that date, Plaintiffs' counsel received approximately 100 lbs worth of documents from Cathy Lowry, yet there are no documents labeled as such in Plaintiffs' case files. The "2-10-05" documents as described in the Spanhel memorandum are remarkably similar to the documents labeled "2-10-04." Lastly, several documents in the file folders labeled "2-10-04" have dates on them from *after* February 10, 2004. The uncontested evidence demonstrates that the labels that Defendants claim prove Plaintiffs' counsel should be disqualified are simply mis-dated. The label should have read that the documents were received from Cathy Lowry on February 10, 2005, not February 10, 2004. The only "evidence" to suggest that Plaintiffs' counsel are the untruthful conspirators Defendants charge is the mislabeled file folders themselves. Given the uncontrovertible evidence presented by Plaintiffs, Defendants cannot meet their burden of proof and the Court should deny Defendants' Motion for Sanctions.[5]

---

[5]. Defendants also claim the Court should disqualify Plaintiffs' counsel because they requested that Plaintiffs' counsel turn over the documents and counsel "relented only after prolonged resistance by Edwards & George." *See* Defendants' Motion for Sanctions at 7. Defendants own evidence demonstrates that they initially requested the documents be turned over to them on April 19, 2005. *See* Letter of Larry D. Knippa to David George (Apr. 19, 2005), attached as Exhibit P to Defendants' Motion. Again, Defendants' own evidence demonstrates that Plaintiffs' counsel agreed to turn these documents over to Defendants on April 27, 2005. *See* Agreement of Larry D. Knippa and David George (Apr. 27, 2005), attached as Exhibit Q to Defendants' Motion. Thus, this prolonged resistance described by Defendants lasted an entire eight days, counting the weekend. A delay of a little over one week is not a "a violation ris[ing] to a level requiring action." *Cramer v. Sabine Transportation Co.*, 141 F. Supp. 2d 727, 731 (S.D. Tex. 2001).

8

                Respectfully submitted,

                */s/ Derek Braziel*
                Derek Braziel
                State Bar No. 00793380
                S.D. Bar No. 21134
                EDWARDS & GEORGE, LLP
                208 N. Market Street, Suite 400
                Dallas, Texas 75202
                (214) 749-1400
                (214) 749-1010 (facsimile)

                ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:
EDWARDS AND GEORGE, LLP
Patrick K.A. Elkins
State Bar. No. 24045829
S.D. Bar No. 570845
1000 Louisiana, Suite 1300
Houston, Texas 77002
(713) 339-3233
(713) 339-2233 (facsimile)

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 2nd day of June, 2005, I faxed and mailed, postage prepaid, certified return receipt requested, a true and correct copy of this document the following counsel of record in accordance with to the Federal Rules of Civil Procedure:

    Michael Jay Kuper
    2800 Post Oak Boulevard, 61st Floor
    Houston, Texas 77056
    Fax: 713-892-4828

    Raymond L. Kalmans
    109 N. Post Oak Lane, Suite 300
    Houston, Texas 77024
    Fax: 713-785-2091

                */s/ Derek Braziel*
                Derek Braziel